UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JONATHAN GUSTAVO GONZALEZ LOPEZ,<br>    Petitioner,<br><br>v.<br><br>DAVID WESLING, *in his official capacity as Field Office Director of Enforcement and Removal Operations, Boston Field Office, I.C.E.*; KRISTI NOEM, *in her official capacity as Secretary, U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA J. BONDI, *in her official capacity as U.S. Attorney General*; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and MICHAEL NESSINGER, *in his official capacity as Warden of Wyatt Detention Facility*,<br>    Respondents. | No. 26-cv-047-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Jonathan Gustavo Gonzalez Lopez brings this habeas petition under 28 U.S.C. § 2241, alleging that Immigration and Customs Enforcement ("ICE") is unlawfully detaining him at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1. Mr. Gonzalez Lopez seeks immediate release from ICE custody and/or a bond hearing before an Immigration Judge ("IJ"). *Id.* The Government objects to Mr. Gonzalez Lopez's request for relief. ECF No. 6.

For the reasons that follow, the Court GRANTS Mr. Gonzalez Lopez's habeas petition and ORDERS his immediate release.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

"'The government's power to detain an immigrant must be grounded in a specific provision' of the Immigration and Nationality Act ('INA')." *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *1 (D.R.I. Jan. 21, 2026) (quoting *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018)). Two statutory provisions generally authorize the Department of Homeland Security ("DHS") to detain noncitizens both before and after they are ordered removed from the United States.

#### 1. Section 1226(a): Detention Pending the Removal Order

Section 1226(a) is the provision that permits DHS "to detain certain [noncitizens] already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (citing 8 U.S.C. § 1226(a)). This statutory provision is often called the "discretionary detention statute" because it permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General," or their designees, pending a decision on whether the [noncitizen] is to be removed from the United States." *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. 2025); *see also Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *1 (D.R.I. Oct. 27, 2025). If the Government arrests a noncitizen on such a warrant, then the Attorney

General or their designees may then continue to detain them or release them on bond of at least $1,500 or conditional parole. *Tomas Elias*, 2025 WL 3004437, at *1 (citing 8 U.S.C. §§ 1226(a)(1)-(2)).

An ICE officer "makes the initial determination for noncitizens subject to detention under section 1226(a)." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). If the officer opts for continued detention, then the noncitizen has a Fifth Amendment Due Process right to seek review of that decision at a bond hearing (also known as a "custody redetermination hearing") before an IJ. *Id.* at 41. At that hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or (2) "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* If the Government fails to meet this burden, then bond or conditional parole must be granted. *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, --- F.Supp.3d ----, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025)). If, however, the Government does meet its burden and the IJ determines that the noncitizen must remain in custody, then the noncitizen may further appeal that decision to the Board of Immigration Appeals ("BIA"). *Hernandez-Lara*, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(d)(3)).

    2.    Section 1231(a): Detention Pursuant to a Reinstated Removal Order

Under 8 U.S.C. § 1231(a), "Congress has created an 'expedited removal process' for noncitizens who reenter the United States unlawfully after having previously

been removed." *G.P. v. Garland*, 103 F.4th 898, 900 (1st Cir. 2024) (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 529-30 (2021)). Specifically, this provision of the INA authorizes DHS to reinstate a prior order of removal against a noncitizen who has been found to have "reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 366 (D. Mass. 2025) (citing 8 U.S.C. § 1231(a)(5)).

Once the prior order has been reinstated, DHS must remove the noncitizen within a 90-day "removal period."[1] *Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(A)). Noncitizens are subject to mandatory detention during this period. *Id.* (citing 8 U.S.C. § 1231(a)(2)). If the noncitizen is not removed within the 90-day removal period, then they are only subject to discretionary detention, meaning they "'may be detained' or may be released under terms of supervision." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) (quoting 8 U.S.C. § 1231(a)(6)).

### 3. 8 C.F.R. § 241.8: Procedures Governing Reinstatement of Prior Removal Orders

8 C.F.R. § 241.8 is the regulation that governs the reinstatement of prior removal orders by DHS. *Guzman Chavez*, 594 U.S. at 530. Pursuant to this regulation, an immigration official within DHS must: "(1) determine the noncitizen 'has been subject to a prior order of removal' and obtain a copy of the order; (2) confirm

---

[1] The "removal period" begins on the latest of three dates: (1) "[t]he date the order of removal becomes administratively final," (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order," and (3) "if the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." *Mavungo-Raymond*, 2026 WL 161358, at *2.

4

the identity of the noncitizen; and (3) determine whether the noncitizen 'unlawfully reentered the United States.'" *Casas v. Garland*, 47 F.4th 548, 551 (7th Cir. 2022) (quoting 8 C.F.R. §§ 241.8(a)(1)-(3)); *see also Guzman Chavez*, 594 U.S. at 530.

Once it has made this determination, then DHS must provide the noncitizen with written notice of its reinstatement decision and allow the noncitizen an opportunity to provide "a written or oral statement contesting that determination." *Casas*, 47 F.4th at 551 (quoting 8 C.F.R. § 241.8(b)). "Only after the noncitizen is given notice and an opportunity to respond may DHS reinstate the removal order." *Id.* (citing 8 C.F.R. § 241.8(c)); *see also Guzman Chavez*, 594 U.S. at 530. Notably, a noncitizen who has a prior order of removal reinstated "has no right to a hearing before an immigration judge in such circumstances." 8 C.F.R. § 241.8(a).

### B. Factual and Procedural Background

The facts of this case are disputed.

#### 1. Mr. Gonzalez Lopez's Assertions

According to Mr. Gonzalez Lopez, he is a citizen of Guatemala who entered the United States in or about August 2008. ECF No. 1 at 9. Since arriving more than 17 years ago, Mr. Gonzalez Lopez states that he has married a U.S. citizen and has been granted a Provisional Unlawful Presence Waiver.[2] *Id.* at 3; ECF No. 1-3 at 5.

---

[2] Under certain circumstances, a noncitizen who has been unlawfully present in the United States and who then leaves the country will be deemed "inadmissible" and becomes barred from reentry. *Novack v. Miller*, 727 F. Supp. 3d 70, 72-73 (D. Mass. 2024) (citing 8 U.S.C. § 1182(a)(9)(B)(i)). However, the noncitizen can seek an exception from this restriction by filing a Form I-601A with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* at 73. The Secretary of DHS may then choose to waive the bar on reentry for "'an immigrant who is the spouse … of a United States

5

Mr. Gonzalez Lopez asserts that ICE officers arrested him on January 10, 2026, while he was driving to work, and then transferred him to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1 at 2. While in detention, Mr. Gonzalez Lopez requested a bond hearing before an IJ. *Id.* at 9. He argues that his detention is governed by 8 U.S.C. § 1226(a), the discretionary detention statute. *Id.* at 4-5. A bond hearing was held on January 22, 2026, but the IJ concluded that she did not have jurisdiction to consider Mr. Gonzalez Lopez's request for bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[3] *Id.*

### 2. The Government's Assertions

According to the Government, Mr. Gonzalez Lopez entered the United States on or about July 2008 and was encountered by a United States Border Patrol ("USBP") agent. ECF No. 6 at 2; ECF No. 6-1 at 2. The agent determined that Mr. Gonzalez Lopez did not possess a valid entry document, and he was later issued an expedited order of removal. ECF No. 6-1 at 2. Pursuant to this expedited order of removal, the Government claims that USBP removed Mr. Gonzalez Lopez from the United States on or about July 11, 2008. *Id.* at 3. As part of his removal, the

---

citizen' for whom the 'refusal of admission [of their spouse] … would result in extreme hardship.'" *Id.* (quoting 8 U.S.C. § 1182(a)(9)(B)(v)).

[3] This decision by the BIA, which is binding on IJs, treats noncitizens who enter the United States without inspection or admission and who then reside in the country for several years thereafter as "applicants for admission," meaning they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). However, that decision is not binding on this Court, and this Court must instead "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

6

Government states that it issued Mr. Gonzalez Lopez an A-Number: A-XXX-XXX-527 (i.e., the "First A-Number").[4] *Id.*

The Government further asserts that Mr. Gonzalez Lopez subsequently reentered the United States without inspection or admission. *Id.* The Government concedes that USCIS granted Mr. Gonzalez Lopez a Provisional Unlawful Presence Waiver. *Id.* However, in processing this request, the Government asserts that USCIS inadvertently issued Mr. Gonzalez Lopez a second A-Number: A-XXX-XXX-587 (i.e., the "Second A-Number"). *Id.*

Following his arrest and detention on January 10, 2026, the Government contends that ICE reinstated Mr. Gonzalez Lopez's prior removal order. *Id.* The Government further alleges that, during his bond hearing, the IJ presiding over the matter only had information relating to Mr. Gonzalez Lopez's Second A-Number. *Id.* at 3-4. The Government submits that the information related to Mr. Gonzalez Lopez's First A-Number was not available to the IJ because DHS did not consolidate the two immigration files. *Id.* at 4.

The Government's position is that Mr. Gonzalez Lopez is detained under 8 U.S.C. § 1231(a)(5), arguing that the reinstated removal order mandates this result. ECF No. 6 at 2. The Government has also stated that it is in the process of scheduling

---

[4] An A-number simply refers to a noncitizen's immigration file, which contains information pertaining to the noncitizen's immigration history. *See United States v. Diaz*, 519 F.3d 56, 60 (1st Cir. 2008).

7

a reasonable fear interview[5] for Mr. Gonzalez Lopez because he fears returning to Guatemala. *Id.*; ECF No. 6-1 at 4.

## II. DISCUSSION

### A. Jurisdiction

Before reaching the merits of Mr. Gonzalez Lopez's petition, the Court must first assure itself of its jurisdiction. Though neither of the parties have raised it, this Court is always "under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate." *Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1258 (1st Cir. 1993).

Regarding reinstatement orders, there is a jurisdictional limit to what this Court may review. The First Circuit has held that the jurisdiction-channeling provision of the INA provides federal courts of appeals with "the sole and exclusive means for judicial review of an order of removal." *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020) (quoting 8 U.S.C. § 1231(a)(5)). This jurisdictional limit extends to reinstatement orders because they are "the functional equivalent of ... final order[s] of removal." *Lattab v. Ashcroft*, 384 F.3d 8, 13-14 (1st Cir. 2004) (quoting *Arevalo v. Ashcroft*, 344 F.3d 1, 5 (1st Cir. 2003)).

---

[5] If a noncitizen with a reinstated order of removal expresses a fear of persecution or torture to DHS upon returning to their country of removal, then DHS will refer them to an asylum officer for a "reasonable fear determination." *Guzman Chavez*, 594 U.S. at 531; *see* 8 C.F.R. § 241.8(e). If the asylum officer concludes that the noncitizen has a reasonable fear, then the officer will refer the matter to an IJ for initiation of "withholding-only proceedings." *Guzman Chavez*, 594 U.S. at 531. If the noncitizen is then granted withholding-only protection, then the noncitizen may not be deported to that specific country. *Id.* at 530-31 (citing 8 C.F.R. §§ 208.16-208.17).

8

Relatedly, 8 U.S.C. § 1252(b)(9) makes it so that the immigration courts and the BIA decide all legal and factual questions "arising from" the removal process, "with judicial review of those decisions vested exclusively in the courts of appeals." *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 9 (1st Cir. 2007)). However, claims that are "independent of, or wholly collateral to, the removal process" do not "arise from" the removal process and can be heard by the district court. *D.V.D.*, 778 F. Supp. 3d at 371-72 (quoting *Gicharu*, 983 F.3d at 16).

For instance, this Court previously held that it was without jurisdiction to consider the claim of a petitioner who challenged the manner in which ICE reinstated his prior removal order. *Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 WL 3295485, at *4-5 (D.R.I. Nov. 26, 2025). Because the asserted deficiencies with the reinstatement order were "inextricably intertwined" with the removal process itself, the Court found that it was barred from reviewing the petitioner's claim. *Id.* (citing *Gicharu*, 983 F.3d at 17; *Aguilar*, 510 F.3d at 9).

Challenges to detention are a different story. The First Circuit has noted that noncitizens may pursue habeas challenges to the legality of their detention in district court because those challenges are independent of removal proceedings and, thus, not barred by 8 U.S.C. § 1252(b)(9). *Aguilar*, 510 F.3d at 11 (citing *Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005)); *see also Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir. 1998).

Here, even assuming there is a reinstated order of removal against Mr. Gonzalez Lopez (that fact is in dispute), Mr. Gonzalez Lopez does not challenge this

9

reinstatement. Instead, Mr. Gonzalez Lopez challenges the legality of his current detention by ICE. *See* ECF No. 1 at 10, 11, 12, 14, 15 (arguing that Mr. Gonzalez Lopez's "continuing detention is … unlawful"). This is precisely the type of claim over which this Court has jurisdiction. *See Aguilar*, 510 F.3d at 11; *Goncalves*, 144 F.3d at 120. As such, the Court will now proceed to the merits of Mr. Gonzalez Lopez's petition.

B. **The Merits**

The central dispute in this case is over the precise statute that governs Mr. Gonzalez Lopez's detention. Determining which statute governs is significant, because "[w]here [a noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

The Government's theory of its detention authority over Mr. Gonzalez Lopez is grounded in Section 1231(a)(5). ECF No. 6 at 2. Recall that, to detain a noncitizen under this provision of the INA, DHS must execute a reinstated order of removal against the noncitizen. *See* 8 U.S.C. § 1231(a)(5); *see also* 8 C.F.R. § 241.8(f) ("Execution of the reinstated order of removal and detention of the [noncitizen] shall be administered in accordance with this part."). Agency officials execute the reinstated removal order by issuing a "Notice of Intent/Decision to Reinstate Prior Order" to the noncitizen.[6] *Ponta-Garca v. Ashcroft*, 386 F.3d 341, 342 (1st Cir. 2004).

---

[6] This Notice is also referred to as a Form I-871. *Ponta-Garca*, 386 F.3d at 342.

The Notice contains an "acknowledgement and response" portion where the noncitizen is prompted to sign. *See Telles v. Lynch*, 639 F. App'x 658, 660 (1st Cir. 2016).

In this case, something that is notably absent from the record is Mr. Gonzalez Lopez's reinstated order of removal. The only reference to the reinstated order comes from a declaration filed by Keith Chan, ICE's Assistant Field Office Director, who simply states that ICE "reinstated Petitioner's prior removal order." ECF No. 6-1 at 3. The Government claims that this declaration "*alone* undermines the sole basis of the petition, which is to demand a bond hearing to which the Petitioner is not entitled." ECF No. 6 at 2 (emphasis added).

This position is not well taken. The Government has failed to produce any tangible evidence to demonstrate that Mr. Gonzalez Lopez is subject to a reinstated order of removal. Most significantly, the Government does not offer its "Notice of Intent/Decision to Reinstate Prior Order" for Mr. Gonzalez Lopez, as it has done in other immigration cases before this Court. *See, e.g., Cruz*, 2025 WL 3295485, at *3. Nor does Mr. Chan even mention in his declaration that ICE has provided Mr. Gonzalez Lopez with this Notice since his detention began nearly a month ago. ECF No. 6-1 at 1-4 (noting absence of any notice being provided to Mr. Gonzalez Lopez).

This is not just any piece of paper. According to its own regulations, ICE must provide noncitizens with written notice of its reinstatement determinations and with the ability to contest those determinations. *Guzman Chavez*, 594 U.S. at 530; *see* 8 C.F.R. § 241.8(b). Indeed, "the essential requirements of procedural due process

11

include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It is troubling that, on the record before it, the Court cannot say whether ICE has met these basic procedural due process requirements.

The Notice is also relevant because it bears on the Court's determination of the statutory authority governing Mr. Gonzalez Lopez's detention. In factually similar cases, where noncitizens have challenged the Government's authority to detain them based on reinstated orders of removal, courts have primarily looked to whether the Government has included the "Notice of Intent/Decision to Reinstate Prior Order" as evidence against the noncitizen. *See, e.g.*, *L-J-P-L- v. Wamsley*, No. 3:25-cv-01390-IM, 2025 WL 2430268, at *7-10 (D. Or. Aug. 22, 2025) (denying habeas petition and concluding that petitioner's detention was lawful under Section 1231(a) where ICE produced the petitioner's "Notice of Intent/Decision to Reinstate Prior Order" and that, "[b]ased on the exhibits," the petitioner had not demonstrated ICE failed to comply with 8 C.F.R. § 241.8); *Arguello v. Noem*, No. 2:25-cv-00786-RJS, 2025 WL 2896849, at *7 (D. Utah Oct. 9, 2025) (finding that habeas petitioner "received constitutionally sufficient notice of his removal" and rejecting petitioner's detention challenge where ICE introduced the petitioner's "Notice of Intent/Decision to Reinstate Prior Order" to the Court); *J.R.M.J. v. Wofford*, No. 1:25-cv-01567-DC-SCR, 2025 WL 3295593, at *3 (E.D. Cal. Nov. 26, 2025) (determining that habeas

12

petitioner's "prior removal order was properly reinstated" where ICE introduced into evidence the petitioner's "Notice of Intent/Decision to Reinstate Prior Order").

It stands to reason that without the Notice, or any other document evidencing a reinstated order of removal, the Government cannot show that it is entitled to detain Mr. Gonzalez Lopez under Section 1231(a)(5). All that the Government is able to muster in support of its position is an unverified, unsubstantiated claim by Mr. Chan that ICE has summarily reinstated Mr. Gonzalez Lopez's removal order. But as this Court has stressed in recent months, assertions by ICE are not true simply because an ICE official says they are.

For example, in *Hall v. Nessinger*, this Court held that, in the case of a noncitizen who had his supervised release revoked by ICE and who was brought back into ICE custody, it was not enough for Mr. Chan to state in a declaration that a travel document had issued for the noncitizen such that his removal from the United States was "significantly likely to occur in the reasonably foreseeable future." No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *8 (D.R.I. Jan. 2, 2026). Without the Government producing the alleged travel document or providing any verifiable proof that such a document existed, this was insufficient "evidence" to justify the noncitizen's re-detention, and the Court ordered him released. *Id.* at 8, 9.

Likewise, in *Bulle v. Wesling*, the Court found to be unavailing Mr. Chan's statement in a declaration that ICE had issued a noncitizen—who had also been re-detained after the agency revoked his supervised release—a "Notice of Revocation of Release." No. 26-cv-019-JJM-AEM, 2026 WL 183840, at *6 (D.R.I. Jan. 23, 2026).

13

Notably, when the Government failed to provide this Notice—albeit, because ICE claimed to have been "unable to locate" it—the Court concluded that the Government had failed to provide the noncitizen with meaningful notice of the reasoning behind his re-detention and ordered him released. *Id.* at 6, 9.

Other courts have recently encountered similar situations where ICE has not been particularly forthcoming in its response to habeas petitions. *See, e.g.*, *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025) ("[T]here is absolutely no record of the decision to revoke [Petitioner's] release ... which reveals an even more significant due process problem because no one ... knows with any degree of certainty what legal and factual basis was relied upon in making the determination, which hinders any meaningful challenge to the decision."); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025) ("Respondents have not presented the court with a copy of the 2025 Notice of Revocation of Release, which should have been provided to Petitioner and stated the reasons for revocation of release.").

Thus, on the record before it, the Court simply cannot say that Mr. Gonzalez Lopez is subject to a reinstated order of removal. The very "essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 120 (2020) (recognizing in the immigration context that "[h]abeas is at its core a remedy for unlawful executive detention"). And, as Mr. Gonzalez Lopez rightfully points out, without evidence of a reinstated removal order,

14

there is no legal justification by which ICE can detain him pursuant to Section 1231(a)(5).  ECF No. 7 at 3.

Because the Government does not allege that he is subject to any other detention provision of the INA, Mr. Gonzalez Lopez's detention is therefore properly governed by Section 1226(a).  *Cf. Mavungo-Raymond*, 2026 WL 161358, at *8 (finding that, where the Government could not establish that a noncitizen was subject to detention under Section 1231, the noncitizen's "detention was properly governed by 8 U.S.C. § 1226(a)" instead); *Valladares v. Hyde*, No. 1:25-cv-13271-IT, 2025 WL 3719643, at *3 (D. Mass. Dec. 23, 2025) (same).

In addition, because he is detained under Section 1226(a), Mr. Gonzalez Lopez has a constitutional right to a bond hearing before an IJ where the Government bears the burden of proving either: (1) "by clear and convincing evidence that [he] poses a danger to the community" or (2) "by a preponderance of the evidence that [he] poses a flight risk."  *Hernandez-Lara*, 10 F.4th at 41.

This Court has ordered the immediate release of individuals who have been detained subject to Section 1226(a) while they await their bond hearings.  *See, e.g.*, *Tomas Elias*, 2025 WL 3004437, at *5; *Tejada Polanco v. Hyde*, Nos. 25-cv-552-JJM-AEM, 25-cv-561-JJM-AEM, 2025 WL 3033926, at *2 (D.R.I. Oct. 30, 2025); *Herrera Martinez v. Hyde*, No. 25-cv-575-JJM-AEM, 2025 WL 3124025, at *2 (D.R.I. Nov. 7, 2025); *Barrera Rodriguez v. Hyde*, No. 25-cv-607-JJM-PAS, 2025 WL 3274606, at *2 (D.R.I. Nov. 25, 2025); *Mendes v. Hyde*, No. 25-cv-627-JJM-AEM, 2025 WL 3496546, at *2 (D.R.I. Dec. 5, 2025); *Mavungo-Raymond*, 2026 WL 161358, at *9.  Given that

15

he too is subject to Section 1226(a), the Court finds that Mr. Gonzalez Lopez's immediate release is appropriate.

### III. CONCLUSION

For these reasons, the Court GRANTS Mr. Gonzalez Lopez's habeas petition. ECF No. 1. The Government is hereby ORDERED to provide Mr. Gonzalez Lopez with a bond hearing before an IJ under 8 U.S.C. § 1226(a) within ten days of the date of this order.[7] The Court further ORDERS the Government to **release Jonathan Gustavo Gonzalez Lopez immediately** pending the bond hearing.

Per its request, the Government is permitted to transfer Mr. Gonzalez Lopez to Burlington, Massachusetts to process his release and to set minimal release conditions that will reasonably assure his appearance at the bond hearing. ECF No. 6 at 3 n.3. However, effectuating this transfer shall not in any way impede Mr. Gonzalez Lopez's **immediate release**.

Finally, the Court ORDERS the Government to file a status report within five days of Mr. Gonzalez Lopez's bond hearing, stating whether he has been granted bond and, if his request for bond was denied, the reason for that denial.

---

[7] Though it is referred to as a "bond" hearing, the Court emphasizes that Section 1226(a) *also* provides IJs with the ability to release noncitizens on "conditional parole." *See* 8 U.S.C. § 1226(a)(2)(B). This is the equivalent of "release on recognizance," and it does not require noncitizens to post bond. *Martinez v. Hyde*, 792 F. Supp. 3d 211, 216 (D. Mass. 2025) (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007)).

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

February 5, 2026

17